IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CARLOS ARGUELLO,

            Plaintiff,

v.                                                    No. CIV-12-0939 LAM

CAROLYN W. COLVIN, Acting Commissioner
of the Social Security Administration,

            Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision (Doc. 15)* and *Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision (Doc. 16)* (hereinafter, collectively, "*Motion*"), both filed April 5, 2013.  In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case.  *See* [*Docs. 4* and *6*].  On June 4, 2013, Defendant filed *Defendant's Response to Plaintiff's Motion to Reverse and/or Remand the Administrative Agency Decision (Doc. 17)*, and, on June 19, 2013, Plaintiff filed a *Reply Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision (Doc. 18)* and *Notice of Completion of Briefing (Doc. 19)*.  The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law.  Additionally, the Court has meticulously reviewed and considered the entire administrative record.  [*Doc. 11*].  For the reasons set forth below, the Court **FINDS** that

Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED**.

## I.  Procedural History

On April 3, 2009, Plaintiff filed an application for Supplemental Security Income (hereinafter "SSI"), alleging that he became disabled on November 30, 2007. [*Doc. 11-7* at 11-17]. Plaintiff stated that he became disabled due to a learning disability, behavioral problems, dyslexia, and that he cannot read or write much more than his name. [*Doc. 11-8* at 15]. His application was denied at the initial level on June 3, 2009 (*Doc. 11-5* at 2-4) and at the reconsideration level on July 4, 2009 (*id.* at 5-8). Pursuant to Plaintiff's request (*id.* at 19-20), Administrative Law Judge Ben Willner (hereinafter "ALJ") conducted a hearing on November 18, 2010. [*Doc. 11-3* at 30-56]. Plaintiff was represented by counsel and testified at the hearing. *Id.* at 32-51. Vocational Expert Pamela Bowman (hereinafter "VE") also testified at the hearing. *Id.* at 51-56.

On April 18, 2011, the ALJ issued his decision, finding that under the relevant sections of the Social Security Act, Plaintiff was not disabled. [*Doc. 11-3* at 17-29]. Plaintiff requested that the Appeals Council review the ALJ's decision (*Doc. 11-3* at 13), and, on July 6, 2012, the Appeals Council denied Plaintiff's request for review (*id.* at 2-4), which made the ALJ's decision the final decision of the Commissioner. On September 5, 2012, Plaintiff filed his complaint in this case. [*Doc. 1*].

2

## II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The

3

possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim.  20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the SEP, the claimant has the burden to show that:  (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work."  20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

## IV.  Plaintiff's Age, Education, Work Experience,
## and Medical History; and the ALJ's Decision

Plaintiff was born on August 23, 1990.  [*Doc. 11-7* at 11].  Plaintiff testified that he finished the ninth grade in school, and was in special education the entire time he was in school.  [*Doc. 11-3* at 37-38].  Plaintiff worked in food preparation at a fast food business for less than two weeks.  [*Doc. 11-8* at 16].  Plaintiff alleges that he became disabled on November 30, 2007, and he is unable to work because of "[l]earning disability/behavioral problems/dyslexic/can't read or write much more than his name."  *Id.* at 15.

The administrative record includes records from: Albuquerque Public Schools Special Education Individualized Education Program [*Doc. 11-8* at 45-59]; Freedom High School, Sierra Alternative Middle School, and Los Niños Elementary School [*Doc. 11-9*]; New Mexico Division of Vocational Rehabilitation [*Doc. 11-10* at 40-42, 61-63]; Mark A. Arcuri, Ph.D. (*id.* at 43-60, and *Doc. 11-11* at 7-25); and UNM Hospitals [*Doc. 11-10* at 65-70, and *Doc. 11-11* at 1-6].  Plaintiff's medical records also include: a Mental Status Consultative Examination by Barbara A. May-Valencia, Ph.D., dated April 18, 2008 (*Doc. 11-10* at 2-9); a Disability Determination Examination by John Owen, Ph.D., dated May 11, 2009 (*id.* at 11-15); a Psychiatric Review Technique by Donald Gucker, Ph.D., dated May 29, 2009 (*id.* at 16-29); a Mental Residual Functional Capacity Assessment by Donald Gucker, Ph.D., dated May 29, 2009 (*id.* at 30-33); and a Case Analysis by W. Logan, dated September 3, 2009 (*id.* at 36).  Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 31, 2009.  [*Doc. 11-3* at 19].  At step two, the ALJ found that Plaintiff has the following severe impairments: "[l]earning disability, rule out cognitive disorder; behavioral disorder; and borderline intellectual functioning."  *Id.*  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.920(d), 416.925 and 416.926).  *Id.* at 20.

Before step four, the ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels, but that Plaintiff works with the following nonexertional limitations: at tasks which require simple tasks and instructions, primarily with things rather than people; at tasks with no reading or writing skills required, with math skills limited to the elementary level; and that Plaintiff is able to maintain concentration, pace and persistence at such tasks for two hours at a time. *Id.* at 21.  In support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, and [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are credible to the extent they are consistent with the [ALJ's RFC] assessment."  *Id.* at 26.  The ALJ noted that Plaintiff and his mother took steps in early 2010 to prepare Plaintiff for employment by contacting the New Mexico Division of Vocational Rehabilitation (hereinafter "DVR"), and Plaintiff "was assigned a counselor and participated in testing procedures to determine what type of employment he might be capable of performing."  *Id.* at 24 and 26.  The ALJ stated that Plaintiff did not attend additional appointments with his counselor.  *Id.* at 26-27.  The ALJ further noted that neither the

DVR counselor, Ms. Nutter, nor psychologist Dr. Arcuri, to whom Plaintiff was referred for a "psycho educational evaluation," "expressed the opinion that the claimant was unable to perform any sort of work." *Id.* at 24 and 27.  The ALJ stated that it was Ms. Nutter's opinion that Plaintiff was very motivated to work and that, with some assistance when first learning his new tasks, Plaintiff would be able to carry the tasks out with very little supervision.  *Id.*  The ALJ, therefore, stated that "[g]iven these factors[, Plaintiff] should be able to benefit in terms of competitive employment by obtaining DVR services such as vocational guidance and counseling to provide support through the completion of the vocational rehabilitation program, job development, and job placement."  *Id.*  In addition, the ALJ noted that: Dr. Arcuri opined that Plaintiff "could achieve successful employment with special training and supervision;" Plaintiff's "test results suggest that [he] could succeed with a variety of hands-on training and tasks with one-to-one training and supervision until tasks are mastered;" and the state agency psychologist who evaluated Plaintiff found that "if motivated to do so, [he] could understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with coworkers and supervisors, and respond appropriately to changes in a routine work setting."  *Id.*  At step four, the ALJ found that Plaintiff has no past relevant work, so the ALJ proceeded to the fifth step.  *Id.*

At the fifth and final step, the ALJ noted that Plaintiff was 18 years old at the time of his alleged onset date, is illiterate and is able to communicate in English.  *Id.*  The ALJ stated that the VE was asked "whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]," and the VE testified that such an individual would be able

to perform the requirements of representative occupations such as polisher, laborer in salvage yard, laundry sorter, and jewelry sorter. *Id.* at 28. The ALJ stated that "the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles." *Id.* The ALJ concluded that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## V. Analysis

Plaintiff contends that the ALJ erred in his RFC assessment because: (1) the ALJ failed to consider whether Plaintiff's psychological impairment met or equaled Listing 12.05 at step three; (2) the ALJ ignored the medical opinion of the state agency physician who examined Plaintiff; and (3) the ALJ's step-five findings are unsupported by substantial evidence because the VE's testimony was in conflict with the Dictionary of Occupational Titles (hereinafter "DOT"). [*Doc. 16* at 7-17]. As relief, Plaintiff asks the Court to either reverse or remand the case for a new hearing. *Id.* at 17. In his response, Defendant disputes Plaintiff's contentions, and states that the ALJ's decision was properly supported by the evidence in the record, and the ALJ used correct legal standards in evaluating the evidence, so the Commissioner's final decision should be affirmed. [*Doc. 17* at 4-14].

### A. The ALJ's Step Three Finding

Plaintiff contends that the ALJ erred in failing to evaluate whether Plaintiff met or equaled a listing-level mental impairment under Listing 12.05(C), which Plaintiff contends was applicable due to Plaintiff's scores on tests issued by consultative physician Dr. Arcuri and state agency physician Dr. May-Valencia. [*Doc. 16* at 7-11] and [*Doc. 18* at 2-4]. In response, Defendant states

8

that the ALJ did not err in failing to consider whether Plaintiff met or equaled Listing 12.05(C) because Plaintiff failed to satisfy either the capsule definition for Listing 12.05 or the severity prong (C) of Listing 12.05.  [*Doc. 17* at 5-7].

"In order to satisfy listing 12.05, a claimant must meet the requirements of that listing's capsule definition as well as one of the four severity prongs for mental retardation as listed in the regulations." *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (citation and internal quotation marks, brackets and ellipses omitted).  The capsule definition for Listing 12.05 states: "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.  The severity prong for Listing 12.05(C) requires a showing of "[a] valid verbal, performance, or full scale IQ score of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. Pt. 404, Subpt. P, App. 1§ 12.05(C).  The second criteria for Listing 12.05(C), that a claimant must demonstrate "a physical or other mental impairment imposing an additional and significant work-related limitation of function," can be met by using an analysis that "closely parallels" the analysis used by the ALJ at step two of the five-step evaluation process, without consideration of whether the claimant can perform any gainful activity beyond the analysis made at step two.  *Hinkel v. Apfel*, 132 F.3d 1349, 1352-53 (10th Cir. 1997).  In addition, with respect to Listing 12.05(C), the Social Security Administration's Program Operations Manual System ("POMS") provides that "slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional

and significant work-related limitation of function may support an equivalence determination." *See* POMS DI 24515.056(D)(1)(c), available at https://secure.ssa.gov/poms.nsf/lnx/0424515056 (site last checked September 23, 2013).

Here, the ALJ considered whether Plaintiff met listings 12.02 (Organic Mental Disorders) or 12.08 (Personality Disorders), but did not evaluate whether he met Listing 12.05 (Mental Retardation). *See* [*Doc. 11-3* at 20]. The ALJ's failure to do so is in error because it leaves the Court with no record as to why the ALJ found the evidence regarding Plaintiff's mental impairments insufficient to satisfy Listing 12.05(C). *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that the ALJ's failure to discuss the evidence or his reasons for determining that the claimant was not disabled at step three was in error because "[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that appellant's impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion"); *see also Peck v. Barnhart*, No. 05-4090, 214 Fed. Appx. 730, 734-35, 2006 WL 3775866 (10th Cir. Dec. 26, 2006) (unpublished) (holding that the ALJ erred in failing to discuss Listing 12.05 or his reasons for rejecting its applicability to the claimant beyond a bare conclusion that the exhibits and testimony in the record did not establish that a Listing was met). The Court finds that Defendant's contention that the ALJ did not err in failing to discuss Listing 12.05 because Plaintiff does not meet the capsule definition of Listing 12.05 and the severity prong (C) of Listing 12.05 fails for several reasons.

10

First, Defendant fails to provide any support for her contention that Plaintiff does not meet the capsule definition because he was not diagnosed with mental retardation.  [*Doc. 17* at 5-6].  The ALJ is required to consider a Listing if the evidence supports a finding that the claimant meets or equals that Listing.  *See Peck*, 214 Fed. Appx. at 734.  The Court is unaware of any authority that requires a diagnosis of mental retardation in order for an ALJ to be required to consider Listing 12.05.  *See, e.g., Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006) ("[T]his court disagrees with the Commissioner that the Listing[ 12.05]'s introductory paragraph requires a formal diagnosis of mental retardation.  The plain language of the Listing does not so state, and the Commissioner cites no supporting authority.").

Second, the Court rejects Defendant's contention that the evidence in the record does not support a finding that Plaintiff meets or equals Listing 12.05.  [*Doc. 17* at 6-10].  To the contrary, the evidence in the record supports a finding that Plaintiff may meet or equal Listing 12.05, such as: the results of Plaintiff's IQ testing conducted before he reached the age of 22 (*Doc. 11-10* at 4 and 47-49);[1] that Plaintiff received special education services throughout his time in school (*Doc. 11-8* at 45-59 and *Doc. 11-9*); and the ALJ's finding of severe impairments relating to a learning disability, behavioral disorder and cognitive disorder (*Doc. 11-3* at 19).  This evidence provided the ALJ with a basis for consideration of Listing 12.05 because it indicates subaverage

_____

[1]On July 8, 2008, state agency physician Dr. May-Valencia administered a IQ test to Plaintiff, and Plaintiff's scores on that test are: Full Scale IQ 76; Performance IQ 78; and Verbal IQ 75.  [*Doc. 11-10* at 4].  On February 26, 2010, consultative physician Dr. Arcuri administered another IQ test to Plaintiff, and Plaintiff's scores on that test are: Full Scale IQ 68; Performance IQ 74; and Verbal IQ 68.  *Id.* at 47.  Both of these tests were administered before Plaintiff reached the age of 22.  The applicable regulations require the ALJ to use the <u>lowest</u> IQ score in cases where there are more than one IQ score.  20 C.F.R. Pt. 404, Subpt. P, App. 1§ 12.00(D)(6)(c).  Plaintiff, therefore, meets the IQ requirement for consideration under Listing 12.05(C).

intellectual functioning before age 22, and a mental impairment imposing an additional and significant work-related limitation of function.  Defendant's contention that Plaintiff did not establish that he has a physical or mental impairment imposing an additional and significant work-related limitation of functioning is without merit because the ALJ found that Plaintiff has severe impairments at step two, which satisfies the additional and significant limitation of functioning requirement.  *See Hinkle*, 132 F.3d at 1352-53 (explaining that a decision regarding whether a claimant has a § 12.05C 'significant limitation' should 'closely parallel' the step two standard and is to be made without consideration of whether the claimant can perform any gainful activity beyond the analysis as made at step two") (citation and footnote omitted); *see also Peck*, 214 Fed. Appx. at 734 (explaining that an ALJ's finding that a claimant suffers from severe impairments at step two meets the additional significant limitation requirement).  Therefore, as the Tenth Circuit held in *Clifton*, the ALJ's failure to discuss the evidence or his reasons for finding that Plaintiff does not meet or equal Listing 12.05 is in error because it leaves the Court unable to assess the ALJ's conclusion.  Defendant's attempt to remedy the ALJ's failure to discuss Listing 12.05 by supplying the justification for the ALJ's conclusion, which is that Plaintiff failed to satisfy either the capsule definition for Listing 12.05 or the severity prong (C) of Listing 12.05, is an impermissible *post hoc* rationalization.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons" for an ALJ's decision after the fact) (citation omitted).

Third, Defendant's contention that the ALJ did not err in failing to discuss Listing 12.05 because Plaintiff did not allege he was disabled due to mental retardation also fails. [*Doc. 17* at 10]. Again, Defendant does not provide any support for her contention that an ALJ is not required to consider Listing 12.05 unless a claimant alleges that he or she is disabled due to mental retardation, and the Court is unaware of any authority for this position. *See Peck*, 214 Fed. Appx. at 735 (finding that the ALJ erred in failing to discuss Listing 12.05 even though the claimant's counsel possibly conceded that the listing did not apply, stating that "[e]ven if the representative's comment is reasonably read as a concession, the Social Security Act requires that the ALJ state the factual basis for concluding that a seemingly relevant listing does not apply"). In addition, Plaintiff's counsel submitted a letter to the ALJ on November 16, 2010, suggesting that Plaintiff equals Listing 12.05, thus alerting the ALJ to the relevance of the listing. *See* [*Doc. 11-6* at 36-37]. This letter, along with the evidence discussed above that may support a finding that Plaintiff meets or equals Listing 12.05(C), provided the ALJ with sufficient reason to consider Listing 12.05.

In addition, the Court agrees with Plaintiff's contention that this case is distinguishable from *Bland v. Astrue*, No. 10-3223, 432 Fed. Appx. 719, 722-23, 2011 WL 1571463 (10th Cir. April 27, 2011) (unpublished), where the Tenth Circuit held that the ALJ was not required to address Listing 12.05 even though the claimant had an IQ score of 67 and some evidence of mental deficiencies. *See* [*Doc. 18* at 3-4]. In *Bland*, the claimant completed the 11th grade taking regular classes, was never in special education classes in school, and had a successful work history, including semiskilled work which, as the Tenth Circuit noted, is "inconsistent with mental retardation." 432 Fed. Appx. at 723 (citation omitted). There is no such evidence in this case. The Court also finds that this case

13

is distinguishable from *Fischer-Ross v. Barnhart*, 431 F.3d 729, 735 (10th Cir. 2005), cited by Defendants (*Doc. 17* at 4), where the Tenth Circuit found that the ALJ's failure to consider Listing 12.05(C) was harmless error because the ALJ's findings at steps four and five "conclusively preclude[d Plaintiff's] qualification under the listings at step three" such that "[n]o reasonable factfinder could conclude otherwise." As stated above, Plaintiff's IQ scores, which were obtained before Plaintiff was 22 years of age, along with Plaintiff's educational history and the ALJ's findings that Plaintiff suffers from a severe learning disability and behavioral and cognitive disorders, provide a basis for a finding that Plaintiff meets or equals Listing 12.05(C). The Court, therefore, finds that the ALJ erred in failing to consider Listing 12.05(C).

## B. The ALJ's Consideration of Dr. Owen's Opinion

Next, Plaintiff contends that the ALJ erred by failing to consider the opinion of Dr. Owen, who was the state agency physician who examined Plaintiff. [*Doc. 16* at 11-13] and [*Doc. 18* at 4-5]. Plaintiff contends that Dr. Owen's opinion conflicts with the ALJ's RFC findings regarding Plaintiff's ability to deal with stress in the workplace and his ability to focus and persist at tasks. [*Doc. 16* at 12] and [*Doc. 18* at 4-5]. Plaintiff further states that Dr. Owen's opinion is consistent with the findings of Dr. Arcuri, and that the ALJ erred in failing to consider or sufficiently explain why he did not fully adopt Dr. Owen's opinions. [*Doc. 16* at 12-13].[2] In response, Defendant states

---

[2]Plaintiff also states at the end of his claim regarding the ALJ's consideration of Dr. Owen's opinion that "[t]he ALJ also failed to consider or include all of [Plaintiff's] physical and non-exertional limitations in formulating the RFC," and that "[a] hypothetical question based upon a defective RFC is not valid." [*Doc. 16* at 13]. Plaintiff does not state what other physical or non-exertional limitations he contends the ALJ failed to include in the RFC assessment, nor does he elaborate on his statement regarding the VE's testimony. The Court, therefore, does not consider this to be a claim upon which Plaintiff seeks relief. *See Murrell v. Shalala*, 43 F.3d 1388, 1390, n.2 (10th Cir. 1994) (finding that the "few scattered statements in plaintiff's step-four argument that also suggest dissatisfaction regarding step-five" are (continued...)

14

that the ALJ did consider Dr. Owen's opinion in assessing Plaintiff's RFC, properly evaluated the medical source evidence, and discussed his reasons for giving greater weight to the opinions of Dr. Arcuri and Ms. Nutter. [*Doc. 17* at 11-12].

A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations." 20 C.F.R. § 416.945(a)(1); *see also* SSR 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations."). The ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, medical signs and laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any. *Id.* at *5. With regard to mental impairments, the ALJ's "determination of [a claimant's] mental RFC involves the consideration of evidence, such as: [h]istory, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psychophysiological symptoms; withdrawn or bizarre behavior; anxiety or tension." SSR 85-16, 1985 WL 56855 at *2.

The ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: working at tasks which require simple tasks

---

[2](...continued)
"perfunctory complaints [that] fail to frame and develop an issue sufficient to invoke appellate review") (citations omitted).

and instructions, working primarily with things rather than people, working at tasks with no reading

or writing skills required, working with math skills limited to the elementary level, and the ability

to maintain concentration, pace and persistence at such tasks for two hours at a time.  [*Doc. 11-3*

at 21].  The ALJ noted that Dr. Owen found that Plaintiff had difficulty with reading, writing and

spelling and had limited arithmetic skills, and that in Dr. Owen's opinion, Plaintiff "could

understand simple questions and instructions, but he would have marked difficulty with detailed,

complex communication[,] . . . dealing with stress in the workplace[,] . . . interacting with coworkers

or the public in an employment setting,[ and] . . . focusing and persisting at most work tasks."  *Id.*

at 24.  The ALJ, however, did not state what weight he gave to Dr. Owen's opinion, nor did he

address Dr. Owen's opinion regarding Plaintiff's marked difficulty with dealing with stress in the

workplace or focusing and persisting at most work tasks.  The ALJ's failure to state why he rejected

these findings is in error.  *See* 20 C.F.R. § 416.927(e)(2)(i) (explaining that the findings of state

agency medical or psychological consultants are not binding on an ALJ; however, they are medical

opinion evidence which an ALJ must consider, except as to the ultimate determination of whether

a claimant is disabled).  An ALJ may not "pick and choose among medical reports, using portions

of evidence favorable to his position while ignoring other evidence."  *Carpenter v. Astrue*,

537 F.3d 1264, 1265 (10th Cir. 2008) (citation and internal quotation marks omitted); *see also*

SSR 96-8p, 1996 WL 374184 at *7 ("The RFC assessment must always consider and address

medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source,

the adjudicator must explain why the opinion was not adopted.").  The Court, therefore, instructs

Defendant that on remand, the ALJ shall either explicitly incorporate the findings of Dr. Owen into Plaintiff's RFC assessment, or explain why they are rejected.

### C. The ALJ's Step-Five Findings

Next, Plaintiff contends that the ALJ's step-five findings are unsupported by substantial evidence because the VE's testimony was in conflict with the DOT. [*Doc. 16* at 14-17]. The Court declines to reach Plaintiff's remaining claim regarding the VE's testimony because the RFC assessment and any hypothetical question submitted to the VE at step-five may be affected by the agency's re-consideration on remand of Listing 12.05(C) at step three and Dr. Owen's findings at step four. *See, e.g., Clifton*, 79 F.3d at 1010 (finding that, because the case was remanded for additional proceedings at step three, it was unnecessary to reach the claimant's contentions of error at step five). The Court, therefore, will deny this claim without prejudice.

## VI.  Conclusion

**IT IS THEREFORE ORDERED** that, for the reasons stated above, Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision (Doc. 15)* is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_Lourdes A. Martinez_
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**